UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KENNETH B. RAINEY,

               Plaintiff,

-against-

ADA ELAINE ORTYL; JUDGE CURTIS FARBER; PARKCHESTER CONDOMINIUMS, INC.; PARKCHESTER POLICE DEPARTMENT; NYC POLICE DEPARTMENT; DETECTIVE THOMAS,

               Defendants.

25-CV-1228 (KMW)

ORDER OF DISMISSAL
WITH LEAVE TO REPLEAD

KMBA M. Wood, United States District Judge:

    Plaintiff, proceeding *pro se*, is currently detained at the North Infirmary Command on Rikers Island. By order dated February 12, 2025, the Court granted Plaintiff's request to proceed *in forma pauperis*, that is, without prepayment of fees.[1] (ECF No. 5.) On May 22, 2025, Plaintiff submitted as of right an amended complaint. (ECF No. 7.)

    In the amended complaint, Plaintiff asserts claims for violations of the Electronic Communications Privacy Act ("ECPA") of 1986 and New York's Criminal Procedure Law Section 700.05. (*Id.* at 3.) He sues New York Supreme Court Justice Curtis Farber, Assistant District Attorney ("ADA") Elaine Ortyl, the New York City Police Department ("NYPD"), and NYPD Detective Thomas, the Parkchester Police Department, and Parkchester Condominiums, Inc. (*Id.* at 1.) For the reasons set forth below, the Court dismisses the amended complaint, with 60 days' leave to replead.

---

[1] Prisoners are not exempt from paying the full filing fee even when they have been granted permission to proceed *in forma pauperis*. *See* 28 U.S.C. § 1915(b)(1).

**STANDARD OF REVIEW**

The Prison Litigation Reform Act requires federal courts to screen complaints brought by prisoners who seek relief against a governmental entity or an officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). The Court must dismiss a prisoner's *in forma pauperis* complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b); *see Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). The Court must also dismiss a complaint if the court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3) Although the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (internal quotation marks and citations omitted) (emphasis in original). But the "special solicitude" courts provide to *pro se* litigants, *id*. at 475 (citation omitted), has its limits—to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2).

**BACKGROUND**

In the amended complaint, Plaintiff alleges that on May 6, 2024, "[he] was on the way up to [his] APT," alone, and began talking to himself. (ECF No. 7 at 3.)[2] Plaintiff goes on to explain that he "could see [a]video camera, but [] had no idea that Parkchester North

---

[2] The Court quotes from the amended complaint verbatim. All spelling, grammar, and punctuation appear as in the amended complaint, unless noted otherwise.

Condominiums was recording [his] conversations in the" elevators. (*Id.*) While in the elevator, Plaintiff writes that that is when he said to himself that he "shot him in the face should've killed him." (*Id.*) Plaintiff asserts that "[t]he fact that they are doing this in all of their bldgs. Is a violation of two federal statutes and one state. The [Electronic Communications Protection Act ("ECPA")] of 1986 and [Criminal Procedure Law ("CPL")] Section 700.05." (*Id.*) Plaintiff was subsequently arrested after a search warrant was executed on his apartment. (*Id.*)

Plaintiff further alleges that the audio recording of him speaking to himself in the elevator of the Parkchester North Condominiums was used in his criminal proceedings. Specifically, Plaintiff complains that "[t]he first time [he] heard the audio recording was when Asst. DA Elaine Ortyl played it at [his] Supreme Court arraignment where she biased the judge against [him] who said on the court record I think she has a very strong case." (*Id.*) The complaint continues that "Judge Curtis Farber then denied [Plaintiff's] motions omnibus and bail reduction. Then when [Plaintiff] had [his] bail reduction hearing, Asst. DA Elaine Ortyl played the audio again and Judge Curtis Farber denied mv bail reduction and the ankle bracelet." (*Id.* at 4.)

Plaintiff contends that he is detained during his criminal proceedings "because Parkchester North violated my rights and the Asst. A.D.A. and Judge Farber have exasperated it." (*Id.*) Because of Plaintiff's pretrial detention, he has been unable to assist his elderly and bedridden mother with her medical appointments. (*Id.*)

Plaintiff asserts claims for violations of the ECPA and New York's CPL Section 700.05, seeking monetary damages of $20 million. (*Id.*) He sues Justice Curtis Farber, ADA Elaine Ortyl, the NYPD, NYPD Detective Thomas, the Parkchester Police Department, and Parkchester Condominiums, Inc. (*Id.* at 1.)

**DISCUSSION**

A.  **Claims Against Justice Farber**

Judges are absolutely immune from suit for damages for any actions taken within the scope of their judicial responsibilities. *Mireles v. Waco*, 502 U.S. 9, 11 (1991) (per curiam). Generally, "acts arising out of, or related to, individual cases before the judge are considered judicial in nature." *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009). "[E]ven allegations of bad faith or malice cannot overcome judicial immunity." *Id.* at 209 (citations omitted). This is because, "[w]ithout insulation from liability, judges would be subject to harassment and intimidation and would thus lose . . . independence[.]" *Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994) (internal quotations omitted).

Plaintiff alleges that Justice Farber demonstrated bias against him by making rulings unfavorable to him in his state court criminal proceedings. Because Plaintiff sues Justice Farber for "acts arising out of, or related to, individual cases before" him, Justice Farber is immune from suit for such claims. *Bliven*, 579 F.3d at 210. The Court therefore dismisses Plaintiff's claims against Justice Farber for damages because he is immune from suit seeking such relief. 28 U.S.C. § 1915(e)(2)(b)(iii).

B.  **Claims Against Assistant District Attorney Elaine Ortyl**

Prosecutors are immune from civil suits for damages for acts committed within the scope of their official duties where the challenged activities are "intimately associated with the judicial phase of the criminal process." *Giraldo v. Kessler*, 694 F.3d 161, 165 (2d Cir. 2012) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)); *see also Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993) (absolute immunity is analyzed under a "functional approach" that "looks to the nature of the function performed, not the identity of the actor who performed it") (internal quotation marks and citations omitted).

Here, Plaintiff's claims against ADA Elaine Ortyl arise from her actions at his arraignment and bail reduction hearing. Plaintiff's claims thus are based on actions within the scope of Defendants' official duties and associated with the "judicial phase of the criminal process." *Giraldo,* 694 F.3d at 165. Therefore, these claims are dismissed because they seek monetary relief against defendants who are immune from such relief. 28 U.S.C. § 1915(e)(2)(b)(iii).

C.     **Claims Against NYPD and NYPD Detective Thomas**

Under Rule 17 of the Federal Rules of Civil Procedure, an entity's capacity to be sued is generally determined by the law of the state where the court is located. *See* Fed. R. Civ. P. 17(b)(3); *Edwards v. Arocho*, 125 F.4th 336, 354 (2d Cir. 2024) ("A plaintiff cannot bring a claim against a municipal agency that does not have the capacity to be sued under *its municipal charter*.") (emphasis in original). New York City's Charter states that agencies of the City of New York cannot be sued in the name of the agency, unless the law provides otherwise. N.Y. City Charter ch. 17, § 396 ("[A]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law."). The New York City Charter does not authorize the NYPD to sue and be sued in the name of the agency. *See* N.Y. City Charter ch. 17, §§ 431-438 (establishing powers of the NYPD); *see also Jenkins v. City of New York*, 478 F.3d 76, 93 n.19 (2d Cir. 2007) ("[T]he NYPD is a non-suable agency of the City."). Plaintiff's claims against the NYPD must therefore be dismissed because it lacks the capacity to be sued in the name of the agency.

Plaintiff names NYPD Detective Thomas as a defendant in the caption of the amended complaint, but there are no allegations in the body of the complaint about what Detective Thomas did or failed to do that injured Plaintiff. Because Plaintiff does not allege facts about

how Defendant Thomas was personally involved in the events underlying the claims, Plaintiff's claims are dismissed for failure to state a claim on which relief may be granted.[3] *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

**D.    Recording of Plaintiff in Parkchester North Condominium Elevator**

Plaintiff invokes the Electronic Communications Privacy Act, which amends and supplements Title III of the Omnibus Crime Control and Safe Street Act of 1968 ("the Act"), 18 U.S.C. § 2510 *et seq*.  Under the Act, injured parties whose oral communications are intercepted have a private right of action in a civil suit.  *See Modelle v. Fauro*, No. 08-CV-1042, 2010 WL 624023, at *6 (N.D.N.Y. Feb. 18, 2010) (noting that the Act "authorizes a private right of action for any person whose wire, oral, or electronic communication is intercepted in violation of the Act"); *see also Huff v. Spaw*, 794 F.3d 543, 548 (6th Cir. 2015) ("Title III provides injured parties with a private right of action against violators."); *Lonegan v. Hasty*, 436 F. Supp. 2d 419, 427 (E.D.N.Y. 2006) ("The procedures for recovering civil damages are set forth in 18 U.S.C. § 2520.").

The Act generally makes it unlawful to "intentionally intercept[ ]. . . any . . . oral . . . communication."  18 U.S.C. § 2511(1)(a).  Not all conversations, however, are protected by Title III.  *See Huff*, 794 F.3d at 548 ("Congress did not enact Title III to protect every face-to-face conversation from interception.").  For purposes of Title III, an "oral communication" is defined

---

[3] The Court notes that public records reflect that Plaintiff pleaded guilty in state court on September 9, 2025, to charges of attempted murder.  *See People v. Rainey*, Ind. 72444-24 (N.Y. Cnty).  Nevertheless, a conviction does not, under *Heck v. Humphrey*, 512 U.S. 477, 487 n. 7 (1994), inevitably bar a Fourth Amendment claim.  *See, e.g., Williams v. Ontario Cnty. Sheriff's Dep't*, 662 F. Supp. 2d 321, 329 (W.D.N.Y. 2009) ("[A] federal court's finding of a Fourth Amendment violation would not necessarily imply that a prior state conviction was unlawful if, despite the constitutional violation, the subject evidence was admissible based on such doctrines as independent source, inevitable discovery, and harmless error.").

as "any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation." 18 U.S.C. § 2510(2). Thus, a person engages in protected oral communication only if he exhibits "an expectation of privacy that is both subjectively and objectively reasonable." *Dorris v. Absher,* 179 F.3d 420, 425 (6th Cir. 1999). This assessment parallels the reasonable-expectation-of-privacy test articulated by Justice Harlan in *Katz v. United States,* 389 U.S. 347, 361 (1967) (Harlan, J., *concurring*); *United States v. Biasucci*, 786 F.2d 504, 510 (2d Cir. 1986) ("[W]hen Congress passed Title III, . . . there is abundant evidence that it specifically intended to adopt the constitutional guidelines announced in . . . *Katz*."); *Tancredi v. Malfitano*, 567 F. Supp. 2d 506, 513 (2008) ("In considering a Title III claim the inquiry is therefore the same as that for a Fourth Amendment claim, whether the subjective expectation of privacy violated by the allegedly illegal intrusion is one society is prepared to recognize as justifiable.") (citation and quotation omitted).

    Plaintiff's amended complaint can be understood as bringing this wrongful interception claims against Defendant Parkchester Condominiums, Inc. and Defendant Parkchester Police Department, which hires special patrol officers to provide security in the condominium complex. Plaintiff's allegations, even when construed in the light most favorable to him, show that he did not exhibit any objectively reasonable expectation of privacy when speaking aloud beneath a security camera in his apartment building's common elevator, which was open to tenants, building personnel, visitors, and others. "[I]t is the established law of this Circuit that the common halls and lobbies of multi-tenant buildings are not within an individual tenant's zone of privacy." *United States v Holland*, 755 F.2d 253, 255-56 (2d Cir 1985); *Tancredi*, 567 F. Supp. 2d at 512 ("The fact that the area, at any time, is open to the public and is a common workplace makes any expectation of privacy in this area unreasonable.").

Even if in some situations there might be a reasonable expectation of privacy in an elevator (such as, for example, with a private, keyed elevator that opens directly into an apartment unit), those circumstances do not apply here.  Plaintiff alleges that he was in a common elevator and saw a plainly visible security camera but incorrectly assumed that there was no audio recording.  Where a plaintiff was aware of the probability of surveillance and merely "underestimated the technological resources available for eavesdropping," *United States v. Harrelson*, 754 F.2d 1153, 1170 (5th Cir. 1985), courts have found no objectively reasonable expectation of privacy.  *See United States v. Willoughby*, 860 F.2d 15, 23 (2d Cir. 1988) ("Mistaking the degree of intrusion of which probable eavesdroppers are capable is not at all the same thing as believing there are no eavesdroppers." (*quoting Harrelson*, 754 F.2d at 1170)).  Plaintiff's allegations that he was aware of the video recording in the common elevator but assumed that there was no audio recording similarly does not suffice to allege that Plaintiff had a reasonable expectation of privacy in statements that he made in the common building elevator.  Because Plaintiff did not have a reasonable expectation of privacy, his statements are not oral communications governed by Section 2511.  Plaintiff thus fails to state a claim on which relief can be granted for a violation of his rights under Section 2511.  *See* § 1915(e)(2)(B)(ii).

E.   **State Law Claims**

A district court may decline to exercise supplemental jurisdiction of state law claims when it "has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988); *see also Royal Canin U. S. A., Inc. v. Wullschleger*, 604 U.S. 22, 32 (2025) (holding that once the district court has dismissed all claims over which it has original jurisdiction, "although supplemental

jurisdiction persists, the district court need not exercise it: Instead, the court may (and indeed, ordinarily should) kick the case to state court.").

Having dismissed the federal claims of which the Court has original jurisdiction, the Court declines to exercise its supplemental jurisdiction of any state law claims Plaintiff may be asserting.[4]  *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("Subsection (c) of § 1367 'confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise.'" (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997))).

## F.     Leave to Amend is Granted

Plaintiff proceeds in this matter without the benefit of an attorney.  District courts generally should grant a self-represented plaintiff an opportunity to amend a complaint to cure its defects, unless amendment would be futile.  *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988).  Indeed, the Second Circuit has cautioned that district courts "should not dismiss [a *pro se* complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."  *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)).  Because Plaintiff may be able to allege additional facts to state a valid claim, the Court grants Plaintiff 60 days' leave to amend to detail his claims. If Plaintiff does not file a second amended complaint within the time allowed, the Court will direct the Clerk of Court to enter judgment in this action.

---

[4] Moreover, any claims that Plaintiff brings under state criminal law cannot proceed because a private party cannot initiate criminal proceedings.  *See Leeke v. Timmerman*, 454 U.S. 83, 87 (1981) ("[T]he decision to prosecute is solely within the discretion of the prosecutor.")

### G.     Pro Bono Counsel is Denied

Plaintiff asks the Court to request *pro bono* counsel to represent him.  The factors to be considered in ruling on an indigent litigant's request for counsel include the merits of the case, Plaintiff's efforts to obtain a lawyer, and Plaintiff's ability to gather the facts and present the case if unassisted by counsel.  *See Cooper v. A. Sargenti Co.*, 877 F.2d 170, 172 (2d Cir. 1989); *Hodge v. Police Officers,* 802 F.2d 58, 60-62 (2d Cir. 1986).  Of these, the merits are "[t]he factor which command[s] the most attention." *Cooper*, 877 F.2d at 172.  Because it is too early in the proceedings for the Court to assess the merits of the action, Plaintiff's application for *pro bono* counsel is denied without prejudice.

### CONCLUSION

Plaintiff's federal claims are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)-(iii), and the Court declines supplemental jurisdiction of his state law claims.  28 U.S.C. § 1367(c)(3). Plaintiff's application for the court to request *pro bono* counsel, ECF No. 6, is denied without prejudice. The Court grants Plaintiff 60 days' leave to file a second amended complaint.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal.  *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962). The Clerk of Court is directed to hold this matter open on the docket until judgment is entered.

SO ORDERED.

Dated:   October 10, 2025
             New York, New York

/s/ Kimba M. Wood
KIMBA M. WOOD
United States District Judge